# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HEIDI JOHNSON,
    *Plaintiff*,

    v.

NANCY A. BERRYHILL,
*Acting Comm'r, Social Security*
*Administration,*
    *Defendant*.

No. 3:17-cv-1651 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

On October 2, 2017, Heidi Johnson ("Plaintiff") filed this administrative appeal under 42 U.S.C. § 405(g), 1383(c)(3), and the Due Process Clause of the Fifth Amendment to the United States Constitution against Nancy A. Berryhill, Acting Commissioner of Social Security ("Defendant" or "Acting Commissioner"), seeking this Court's review of the decision of the Social Security Administration ("SSA") denying her claim for Title II and Title XVI disability benefits under the Social Security Act. Complaint ("Compl."), ECF No. 1.

Ms. Johnson moves to reverse the decision of the Acting Commissioner. First Mot. to Reverse the Decision of the Commissioner ("Pl. Mot. to Reverse"), ECF No. 19. She also asks the Court to consider her claims in light of the Supreme Court's Appointments Clause decision, *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2046 (2018). Notice of New Authority, ECF No. 30.

The Acting Commissioner moves the Court to affirm her decision, Mot. to Affirm the Decision of the Comm'r ("Def. Mot. to Affirm"), ECF No. 26; and dismiss Plaintiff's Appointments Clause claim, Mot. to Dismiss Pls. Appointments Clause Claim, ECF No. 35.[1]

---

[1] While the Acting Commissioner only filed a supporting memorandum, it was docketed at the time of filing as a motion. The motion thus did not technically comply with the Federal Rules of Civil Procedure or this Court's Local

For the reasons set forth below, the Court now **GRANTS** Ms. Johnson's motion to reverse the decision of the Acting Commissioner, ECF No. 19; **DENIES** the Acting Commissioner's motion to affirm the decision; and **GRANTS** the Acting Commissioner's motion to dismiss Ms. Johnson's Appointments Clause claim, Mot. to Dismiss Pls. Appointments Clause Claim, ECF No. 35.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.    Factual Background

Born on August 3, 1961, Heidi May Johnson worked in various positions at Wal-Mart, from June 1998 until March 2014. Tr. at 230; Transcript of the Administrative Record ("Tr."), ECF Nos. 15-2–15-14, at 96.[2] From January 2010 to March 2014, Ms. Johnson also worked as home health aide for Companions & Homemakers. *Id.*

On September 16, 2013, Ms. Johnson allegedly injured her right neck, shoulder, and arm while working for Companions & Homemakers and lifting a non-ambulatory patient from a bed to a wheelchair. Disability Report, Tr. 236. Ms. Johnson allegedly received worker's compensation for the injury for roughly six months. *Id.*

In February, March, and April of 2014, Ms. Johnson was allegedly hospitalized for fainting, seizures, and tremors. Transcript of Hearing before Administrative Law Judge Louis

---

Rules. *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."); D. Conn. L. Civ. R. 7(a)(1) (requiring motions involving disputed issues of law to be accompanied by a memorandum of law). Because this issue was not raised by the parties, and because the memorandum otherwise substantively places Plaintiff and the Court on notice of the grounds for seeking the order and clearly states the relief sought, the Court exercises its inherent authority to manage its docket efficiently and construes the memorandum as a properly-filed motion to affirm. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

[2] The record is unclear as to whether Ms. Johnson performed work for Wal-Mart in 2015. The summary earnings statement lists 2014 as the last year for earnings, Tr. 215, whereas the New Hire Information summary lists spring of 2015 as the date of her last earnings, Tr. 216.

Bonsangue ("ALJ Hearing"), Tr. 55; Disability Report, Tr. 232. Ms. Johnson allegedly tried to return to work at Wal-Mart after her hospitalizations, she allegedly seized and could not perform work. Tr. at 74; Disability Report, Tr. 237. Since then, Ms. Johnson has allegedly experienced four to five psychogenic seizures per month.[3] Tr. at 58–59, 72–73; *see also* Hartford Hospital, Psychology Progress Notes, Tr. 1162–75.

On November 24, 2014, Ms. Johnson allegedly underwent surgery to remove "an acute right subdural hematoma." Psychiatric Consultation, Tr. 1266. Shortly after that surgery, she underwent speech, occupational, and physical therapy, including training in the use of a walker. Rehabilitation Admission, Tr. 1269–70. She then was admitted to Crestfield Rehabilitation Center for assistance with a variety of self-care skills, including how to choose clothing, food, and activities. SLP Evaluation & Plan of Treatment, Tr. 1351–52. At that time, Ms. Johnson was considered a risk for falls, compromised general health, dehydration, and further decline in function. *Id*. at 1352.

Ms. Johnson allegedly cannot drive due to her seizures, and cannot cook or clean like she did before the seizures. Disability Report, Tr. 237; Work History Report, Tr. 245 ("I have also had to give up driving."); Activities of Daily Living, Tr. 246 (reporting that she can go to the grocery store and doctor's appointments only when she can get a ride); Note of John Schifferdecker, M.D., Tr. 1407 (Feb. 12, 2015, "Please be advised that Ms. Heidi Johnson is under my care . . . . suffers from convulsions and due to this is unable to drive."). Because of the

---

[3] On December 3, 2014, Bruce S. Rothschild, M.D. wrote: "In trying to ascertain possible psychological etiologies of her nonepileptic seizures, I came out with the following significant events: [1.] Her father died when the patient was 17 and she was very close to him; [2.] She then devoted 25 years of her life [to] helping care for her mother who had cancer. Her mother died five years ago[;] [3] the patient was engaged for the first time 3 years ago and after [a] 6 month engagement, her fiancé sexually assaulted her and she abruptly ended the relationship." Bruce S. Rothschild, M.D., Psychiatric Consultation, Tr. 1266–67.

injury she sustained as a home health aide, Ms. Johnson allegedly does not have full strength or range of motion on her upper right side. Work History Report, Tr. 253 ("I am unable to . . . lift laundry baskets."); Activities of Daily Living, Tr. 249 (reporting that she uses her non-dominant left hand for chores such as dusting and that she has trouble holding the ink dabber for BINGO).

On May 24, 2014, Ms. Johnson summarized the impact of her conditions as:

> I used to be able to work two jobs and go places without asking for a ride. My life has changed completely because of my seizures. I never know when I will have one until the very last minute. Someone has to carry my laundry, my groceries and take me every where I need to go. I am no longer independent. My seizures flared up at church last week and I missed half the service! The seizures also affect me financially, since I am unable to work or drive. I am not able to go where I want, when I want. I've lost my freedom to do what I used to.

Activities of Daily Living, Tr. 253.

On August 26, 2014, the Social Security Administration denied Ms. Johnson's claim for disability benefits for "non-epileptic seizures, vasovagal syncope, peripheral neuropathy, herniated discs . . . , arthritis, Type II Diabetes Mellitus, Hyperlipidemia[,] Hypomagnesmia and Palpitations." Decision on Claim for Disability Insurance Benefits, Tr. at 121–24.

In September of 2014, Ms. Johnson requested reconsideration of her claim. Tr. at 133. On December 15, 2014, the Social Security Administration again denied Ms. Johnson's claim for disability insurance benefits. Tr. at 130–32.

On January 9, 2015, Ms. Johnson requested a hearing by an Administrative Law Judge ("ALJ"). Request for Hearing, Tr. at 133. On June 13, 2016, Ms. Johnson's appeal was heard by ALJ Bonsangue. ALJ Hearing. Ms. Johnson was nearly 55 years old at the hearing. Tr. 96.[4]

At the hearing, Ms. Johnson explained that seizure medication had helped to control the seizures in the top part of her body, but she still had leg seizures roughly twice a week. ALJ

---

[4] Ms. Johnson turned 55 on August 3, 2016. Tr. 96.

Hearing, Tr. 58–60. She also reported episodes of fainting two to three times per month. ALJ Hearing, Tr. 72–73. Ms. Johnson stated that she had to elevate her legs for around thirty to sixty minutes twice a week to alleviate swelling. *Id*. at 62–63. Ms. Johnson reported using a cane much of the time, but testified that she was able to navigate the stairs of her home and take out the trash without a cane. *Id*. at 66–67. Ms. Johnson also described recurrent shoulder pain and hand tremors that occurred three to four times per week. *Id*. at 68–70.

Ms. Johnson told the ALJ that she did not feel she could use a keyboard, but she could shop for groceries and get her groceries from the bus to the house. *Id*. at 70–72. She noted, though, that she had passed out and fallen when getting off of the bus a month before the hearing. *Id*. at 74–75. In her memorandum of law, Ms. Johnson also explained to the ALJ, that, in addition to her non-epileptic seizure disorder, upper right side and right hand impairments, and chronic health conditions (e.g., Type II Diabetes Mellitus), she suffers from learning disabilities. Claimant's Mem. of Law in Supp. of a Disability Finding, Tr. 294, 297. Ms. Johnson allegedly earned a special education certificate, not a high school diploma. *Id*.

The ALJ also heard from a vocational expert who holds a Master's degree in Education, with a specialization in rehabilitation counseling. Resume of Vocational Expert, Tr. 287–88. He testified that Ms. Johnson's Wal-Mart positions had ranged from light to medium exertion and from unskilled to low level semi-skilled. ALJ Hearing, Tr. 79–80. He testified that her home health aid job would be classified as a medium exertion semi-skilled position. *Id*. at 80–81. The ALJ asked the vocational expert to consider whether a hypothetical person of Ms. Johnson's age, education level, past relevant work, limited to light exertional lift with only occasional climbing, stooping, kneeling, crouching, crawling, or overhead reaching with the right upper extremity, could perform any of the work that Ms. Johnson had previously performed. *Id*. at 81–82.

5

The vocational expert testified that this person could perform the jewelry sales person, stock checker position, and cashier/checker positions that Ms. Johnson had performed at Wal-Mart. *Id*. at 82. The vocational expert then testified that there were over one million jobs nationwide with a comparable exertional and skill level as the ALJ's hypothetical. *Id*. at 83–84. The ALJ asked the vocational expert how his answer would change if the hypothetical worker could reach in any directly only occasionally. *Id*. at 84–85.The vocational expert testified that that restriction "would preclude any of [Ms. Johnson's] past work . . . . and it would also preclude the positions that [the vocational expert had] outlined at the unskilled level." *Id*. at 86. The ALJ then asked about a person that could reach, but had to use a cane. *Id*. at 87. The vocational expert stated that the Dictionary of Occupational Titles did not discuss canes, Tr. 87, but that, in his experience doing job placement, this limitation would preclude the stock checker and jewelry sales positions, but not a seated cashier position. *Id*. at 87–88. If the cane was needed for balance, the vocational expert felt that no light work could be performed, including a cashier position. *Id*. at 89. The ALJ added that the hypothetical worker might have four to five seizures per month without warning, to which the vocational expert responded:

> First off, my experience is that frequent seizure activity on the job is not well-tolerated . . . . Your hypothetical essentially talks about five times a month absences . . . . That's well above average absence which is about seven and three-quarters days per year and I have queried employers and most employers can't tolerate more than one to as high as 1.25 days monthly. So your five a month would not be tolerated.

*Id*. at 91.

On August 2, 2016, the ALJ issued an unfavorable decision. Notice of Decision – Unfavorable ("ALJ Decision"), Tr. at 23–36. The ALJ determined that Ms. Johnson's last insured date was December 31, 2019. ALJ Decision, Tr. 28.

At Step One, the ALJ determined that Ms. Johnson had not engaged in substantial gainful activity since February 18, 2014. Tr. 28.

At Step Two, the ALJ determined that Ms. Johnson had several "severe impairments: non-epileptic seizure disorder, degenerative disc disease of the cervical and lumbar spines, cervicalgia and right rotator cuff tendonitis with an impingement syndrome and obesity (20 CFR 404.1520(c))." Tr. 29.

At Step Three, the ALJ found that Ms. Johnson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)", Tr. 29, and that Ms. Johnson had the residual functional capacity to perform light work with certain limitations, Tr. 30.

At Step Four, the ALJ determined that Ms. Johnson "is capable of performing past relevant work as a cashier checker" and that this "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)."

At Step Five, the ALJ concluded that Ms. Johnson "has not been under a disability, as defined in the Social Security Act, from February 18, 2014, through the date of this decision (20 CFR 404.1520(f))." Tr. 36.

On August 2, 2016, Ms. Johnson requested agency review of the ALJ's decision. Notice of Appeals Council Action, Tr. 1.

On August 18, 2016, Dr. Sadaf Khorasanizadeh, M.D., a neurologist that had treated Ms. Johnson since 2014, wrote a letter for her appeal stating that he did "not expect complete

recovery to the point that patient can return to work." Sadaf Khorasanizadeh, Letter re: Social Security Appeal, Tr. at 22.

On September 8, 2017, the Social Security Appeals Council affirmed the ALJ's decision. Notice of Appeals Council Action, Tr. 1–3.

### B. Procedural Background

On October 2, 2017, Ms. Johnson filed this appeal. Compl.

On December 12, 2017, Defendant filed an Answer and the administrative record. Answer, ECF No. 15.

On March 8, 2018, Ms. Johnson moved to reverse the decision of the Acting Commissioner, arguing that the ALJ: (1) failed to develop the record; (2) mechanically applied the age criteria of the Medical-Vocational Guidelines; (3) failed to establish whether Ms. Johnson's cashier checker position was past relevant work; (4) incorrectly found that Ms. Johnson could perform light work; (5) incorrectly found that Ms. Johnson could reach in all directions with her dominant hand; (6) incorrectly reached decisions about the intensity, persistence, and limiting effects of Ms. Johnson's symptoms; (7) failed to acknowledge or comply with the treating physician rule; and (8) failed to develop the record or resolve an inconsistency as to Ms. Johnson's education level. Mem. of Law in Supp. of Mot. for Order Reversing the Comm'ners Decision ("Pl. Mem. of Law"), ECF No. 19-1.

Ms. Johnson further argued that the Social Security Appeals Council mechanically applied the age criteria of the Medical-Vocational Guidelines, *id*. at 5, and that the Commissioner failed to provide regional job numbers, failed to demonstrate a significant number of jobs nationally, and had an insufficient evidentiary basis for the job estimates. *Id*. at 20–22.

On May 4, 2018, Ms. Johnson informed the Court that the Social Security Administration had granted her December 7, 2017 Social Security disability benefits application with an onset date of August 3, 2016, the day after the ALJ denial. Notice of Grant of Pl.'s Subsequent Application, ECF No. 21.

On June 19, 2018, the Commissioner moved to affirm the decision. Def. Mot. to Affirm.

On July 18, 2018, Ms. Johnson filed a reply to Defendant's motion to affirm. Pl.'s Reply to Def.'s Mem. of Law in Supp. for an Order Affirming the Comm'r Decision ("Pl. Reply"), ECF No. 29.

On July 25, 2018, Ms. Johnson requested that the Court consider her claims in light of the Supreme Court's Appointments Clause decision in *Lucia*, 138 S. Ct. 2044, 2046. Notice of New Authority, ECF No. 30. Defendant moved to dismiss Ms. Johnson's Appointments Clause claim. Def.'s Resp. to Pl.'s Notice of New Authority and Mot. to Dismiss Pl.'s Appointments Clause Claim, ECF No. 33.

The parties then filed additional briefs on the Appointments Clause issue. Pl's Mem. in Opp. to Def.'s Mot. to Dismiss Pl.'s Appointments Clause Claim, ECF No. 34; Def.'s Response to Pl.'s Notice of New Authority and Mot. to Dismiss Pl.'s Appointments Clause Claim, ECF No. 35; Notice of New Authority, ECF No. 38; Def. Reply in Supp. of Mot. to Dismiss Pl.'s Appointments Clause Claim and Resp. to Pl.'s Submission of Supp. Authority, ECF No. 39.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also*

*Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018)

("[T]he court may only set aside the ALJ's determination as to social security disability if the

decision 'is based upon legal error or is not supported by substantial evidence.'") (internal

citation omitted) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)).

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin.,*

*Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.

2009)). "'It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 127

(2d Cir. 2008)); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) ("Substantial evidence is

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 401

(1971)). It is a "very deferential standard of review—even more so than the 'clearly erroneous'

standard." *Brault*, 683 F.3d at 448 (quoting *Dickson v. Zurko*, 527 U.S. 150, 153 (1999)).

## III.    DISCUSSION

The Social Security Administration has established a five-step evaluation process for

determining whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). As the agency

explains:

> (i) At the first step, we consider your work activity, if any. If you are doing
> substantial gainful activity, we will find that you are not disabled . . . ;
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If
> you do not have a severe medically determinable physical or mental impairment
> that meets the duration requirement in § 404.1509, or a combination of impairments
> that is severe and meets the duration requirement, we will find that you are not
> disabled . . . ;
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).
> If you have an impairment(s) that meets or equals one of our listings in appendix 1

of this subpart and meets the duration requirement, we will find that you are disabled . . . ;

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . ;

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

20 C.F.R. § 404.1520(a)(4).

### A.     Alleged ALJ Errors

### 1.     The Development of the Record

"[A] social security ALJ . . . must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112 (*citing Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)); *Perez v. Chater*, 77 F.3d 41, 47 (". . . the ALJ generally has an affirmative obligation to develop the administrative record . . . . even when the claimant is represented by counsel[.]").

Courts have remanded ALJ decisions on account of numerous or obvious gaps in the record. *Pniewski v. Astrue*, No. 3:12-CV-01809 (WWE), 2014 WL 2815700, at *2 (D. Conn. June 23, 2014) ("Here, there was an obvious gap in the administrative record, and the ALJ did not possess a complete medical history, as the ALJ lacked plaintiff's psychiatric records.); *Rosa v. Callahan*, 168 F.3d 72, 79–80 ("In this case, which involved a non-English speaking claimant represented only by a 'legal assistant,' there were numerous gaps in the administrative record that should have prompted the ALJ to pursue additional information regarding Rosa's medical history. The ALJ had before her only Dr. Ergas's sparse notes which reflected nine visits

between himself and Rosa, considerably fewer visits than the two likely had based upon Rosa's testimony suggesting monthly treatment over a period of years."); *cf Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (quoting *Rosa*, 168 F.3d at 79 n.5).

Ms. Johnson alleges that the "record is largely undeveloped for the time period after the reconsideration denial through the ALJ decision, [a period of . . . .] one year and seven months," Pl. Mem. of Law at 2, and also that the record is undeveloped and inconsistent with regard to Ms. Johnson's education level. *Id*. at 21–23.

She argues that this is reversible error because: (1) she had "41 active problems, including convulsions . . . . [and] was on 17 medications" as of the final progress note in the record, dated December 31, 2014; (2) she had active and ongoing treatment with her treating physician, Dr. Shifferdecker, during 2015 and 2016; (3) the missing records would have demonstrated that her residual functional capacity was more limiting than the ALJ found; (4) the missing records would have demonstrated that Ms. Johnson's statements concerning the intensity, persistence, and limiting effects of her symptoms were consistent with the medical record; (5) "the job base would have been further eroded" had the vocational expert been properly advised on Ms. Johnson's education level; and (6) the additional records would have provided the ALJ with a more complete record on which to base his decision. *Id*. at 3.

Defendant suggests that Ms. Johnson's arguments fail because: (1) it was her duty to establish her disability; (2) the ALJ did not have a heightened duty to develop the record because Ms. Johnson was represented by counsel; and (3) Ms. Johnson has "point[ed] to no medical

source opinion that is missing that would drastically affect the ALJ's decision." Def.'s Mem. in Supp. of Her Mot. for an Order Affirming the Comm'ner's Decision ("Def. Mem. of Law", ECF No. 26-1, at 26–27.

The Court disagrees.

The ALJ has a duty to develop the record, even when Social Security claimants are represented by counsel. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez*, 77 F.3d at 47. This is the case "even when the claimant is represented by counsel[.]" *Id.* While the ALJ is not obligated to develop an exhaustive medical record, *Lowry*, 474 F. App'x at 804 ("where there are no obvious gaps in the administrative record . . . the ALJ is under no obligation to seek additional information . . . ."), a record containing numerous or obvious gaps should prompt an ALJ to pursue additional information. *See Rosa*, 168 F.3d at 79–80 ("The ALJ had before her only Dr. Ergas's sparse notes which reflected nine visits between himself and Rosa, considerably fewer visits than the two likely had based upon Rosa's testimony suggesting monthly treatment over a period of years.").

Here, the ALJ had almost no 2015 or 2016 health records.[5] Further, the ALJ reached a final decision shortly following the administrative hearing, suggesting little post-hearing development of the record. *See* ALJ Decision at Tr. 23. Finally, the ALJ's findings regarding Ms. Johnson's residual functional capacity and the intensity, persistence, and limiting effects of her symptoms assumed stability or improvement in her health since 2014, including: (1) the long-

---

[5] Defendant claims that the ALJ consulted such records following the hearing. Def. Mem. of Law at 24. The administrative record submitted to this Court, however, contains just a few pages of 2015 and 2016 records. *See*, *e.g.*, Sadaf Khorasanizadeh, Letter re: Social Security Appeal, Tr. at 22; Note of John Schifferdecker, M.D., Tr. 1407.

term efficacy of an increased Depakote dose prescribed on December 2014, *id*. at 33; (2) that she continued to have "no indication of significant depression . . . symptoms," *id*.; and (3) that her various treatments remained "generally successful in controlling [her] symptoms," *id*. at 32 ("restless leg syndrome . . . was treated with the medication Requip."). In contrast to these findings, Plaintiff asserts that the notes following her November 2014 subdural hematoma surgery "reveal a deterioration in her condition." Pl. Mem. of Law at 2–3.

Nineteen months of health records were missing and those records might reveal deterioration in Ms. Johnson's seizure condition.[6] A fuller medical record is necessary to determine whether the persistence of Ms. Johnson's seizures in 2015 and 2016 would have prevented her from working. *See Sanders*, 556 U.S. at 409 ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

As a result, the Court finds that the ALJ erred by failing to develop the record. *Moran*, 569 F.3d at 112, *citing Lamay*, 562 F.3d at 508–09 ("[A] social security ALJ . . . must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.").

2.      **Step Three**

Step Three requires the ALJ to determine whether the claimant has a disability that "meets or equals a listed impairment in appendix 1[.]" 20 C.F.R. § 404.1520(d). "If [the claimant's impairment(s) does not meet or equal a listed impairment, [the ALJ] will . . . make a finding about [the claimant's] residual functional capacity based on all the relevant . . . evidence in [the] case record . . . . [The ALJ will then] use [the] residual functional capacity assessment at

---

[6] The Social Security Administration granted Ms. Johnson's subsequent disability benefits application, with an onset date of August 3, 2016, see Notice of Grant of Pl. Subsequent Application, ECF No. 21, which suggests that her condition may have deteriorated in 2015 or 2016.

the fourth step of the sequential evaluation process to determine if [the claimant] can do [his or her] past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if [the claimant] can adjust to other work[.]" 20 C.F.R. § 404.1520(e).

At Step Three, the ALJ also will determine if the claimant can do sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 404.1567. Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

At each of the steps, the ALJ, as a lay person, is not permitted to substitute his or her own judgment for competent medical opinion. *Rosa,* 168 F.3d at 79 (noting that the ALJ, as a lay person, was "not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by Dr. Ergas in his assessment."); *Thornton v. Colvin,* No. 3:13-CV-1558 (CSH), 2016 WL 525994, at *7 (D. Conn. Feb. 9, 2016) ("In the case at bar, the ALJ decided to disregard a treating physician's medical opinion that Thornton was disabled because, in the ALJ's lay view, the medical records did not support that medical opinion. This runs counter to Second Circuit authority, which disapproves of a non-physician ALJ substituting his or her lay judgment, based upon such a circumstantial critique, for competent medical opinion.").

Ms. Johnson argues that the ALJ erred in finding that: (1) she had the capacity to frequently reach in all directions, Pl. Mem. of Law at 9–11; (2) she could perform light work

despite her frequent use of a cane, *id*. at 7–9; and (3) her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical record, *id*. at 11–14.

Defendant argues that the ALJ did not find that Ms. Johnson had the capacity to frequently reach in all directions, Def. Mem. of Law at 18, that the ALJ's remaining Step Three findings were supported by substantial evidence, *id*. at 16–27.

The Court agrees in part and disagrees in part.

The ALJ did not find that Ms. Johnson could frequently reach in all directions. Rather, the ALJ found that she could perform light work with "postural and environmental limitations." ALJ Decision, Tr. 32. The ALJ gave great weight to state medical consultant Marcia Lipski, M.D., who concluded that Ms. Johnson could only "occasional[ly] use [her] right upper extremity for overhead reaching." *Id*. at 34. The ALJ added that he found even "greater manipulative limitations on the use of [Ms. Johnson's] dominant right arm because [he] had the opportunity to interview her[.]" *Id*. As a result, the ALJ did not find that Ms. Johnson could frequently reach in all directions, as Ms. Johnson argues. The issue is whether the ALJ erred in finding that Ms. Johnson could perform light work, while using a cane.

Light work entails "a good deal of walking or standing, or . . . sitting with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). A claimant who can do light work "must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). Further, that person must be able to stand or walk for approximately six hours of an eight-hour workday. Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

A claimant's use of a cane suggests "some limitation with regard to lifting/carrying/ handling[.]" *Garcia v. Astrue*, 10 F. Supp. 3d 282, 295 (N.D.N.Y. 2012). The use of a cane, however, is not dispositive of a claimant's ability to do light work, though it might trigger the ALJ's duty to further develop the record with regard to the claimant's limitations. *See Johnson v. Barnhart*, 312 F. Supp. 2d 415, 428 (W.D.N.Y. 2003) ("Plaintiff's treating physician checked the blocks on a Social Security form indicating that he found plaintiff 'moderately limited' in walking, standing and sitting. While this does not conclusively establish that plaintiff needed a cane for balance when standing or walking, at the very least, it should have led the ALJ to obtain further evidence from Dr. Slobard before rejecting Dr. Sirotenko's opinion about the need for a cane and changing positions frequently throughout the day[.]").

The ALJ acknowledged that Ms. Johnson needed a cane to walk, but nevertheless found that she could perform light work. *See* ALJ Decision, Tr. 30.The ALJ based his finding, in part, on Ms. Johnson's testimony that she could navigate the stairs of her home and take out the garbage without her cane. ALJ Hearing, Tr. 66. Regardless of Ms. Johnson's mobility in certain circumstances, the ALJ did not discuss Ms. Johnson's typical use of a cane over longer periods of time or the vocational expert's testimony that the Dictionary of Occupational Titles does not discuss canes. Tr. 87. On remand, the ALJ should more fully address the vocational expert's testimony regarding canes and Ms. Johnson's typical use of a cane during an eight-hour period. *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 428 (W.D.N.Y. 2003) ("Plaintiff's treating physician . . . found plaintiff 'moderately limited' in walking, standing and sitting. While this does not conclusively establish that plaintiff needed a cane for balance when standing or walking, at the very least, it should have led the ALJ to obtain further evidence . . . .").

The ALJ also erred in finding Ms. Johnson's statements about the intensity, persistence, and limiting effects of her symptoms inconsistent with her medical record. ALJ Decision, Tr. 32. As explained above, the ALJ consulted only a few pages of 2015 and 2016 records. He compared those records with Ms. Johnson's testimony at a June 13, 2016 hearing, and concluded that there was insufficient medical evidence to support Ms. Johnson's statements about the severity of her symptoms in 2016.

Based almost entirely upon 2014 evidence, the ALJ determined that Ms. Johnson had worked and had, at least sometimes, enjoyed daily activities greater than she alleged in 2016. He also determined, as described above, that her 2014 treatments remained effective (e.g., the prescription medicines Dilantin and Requip). Given that the record consulted by the ALJ was not up to date, the ALJ could not have based his findings on substantial evidence covering the entire period at issue between 2014 and 2016. *See Schaal*, 134 F.3d at 501 (finding that a district court reviewing a disability determination "must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole[.]"). The ALJ thus erred.

The ALJ also erred in discounting the intensity, persistence, and limiting effects of Ms. Johnson's psychogenic convulsions, or psuedoseizures. ALJ Decision, Tr. 31. The ALJ gave great weight to Dr. Rothschild, a treating source, who found no physiological etiology for Ms. Johnson's seizures. *Id*. at 33. In part, the ALJ focused on selected notations in Dr. Rothschild's note, including that Ms. Johnson had a history of unexplained neurological symptoms and that she sought worker's compensation after her injury as a home health aide. *Id*. This limited set of facts, however, provide an insufficient basis for a finding regarding the intensity, persistence, and limiting effects of Ms. Johnson's psychogenic convulsions, particularly given the absence of

a complete medical record for 2015 and 2016.[7] *See Dowling v. Comm'r of Soc. Sec.*, No. 5:14-CV-0786 GTS/ESH, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) ("The fundamental deficiency involved with 'cherry picking' is that it suggests a serious misreading of evidence, or failure to comply with the requirement that all evidence be taken into account, or both.").

The ALJ's error regarding the intensity, persistence, and limiting effects of Ms. Johnson's psychogenic seizures, mainly relying on an incomplete record in making such findings, warrants a remand.

### 3. Step Four

At Step Four, the ALJ considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1560(a)(4)(iv).

Residual functional capacity is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." (*quoting* Social Security Ruling 96–8p, July 2, 1996)). An ALJ must consider both a claimant's severe impairments and non-severe impairments in determining the claimant's residual functional capacity. 20 C.F.R. § 416.945(a)(2); *see De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936–37 (2d Cir. 1984) ("To be sure, De

---

[7] The ALJ also noted that Dr. Koby once advised Ms. Johnson that "non-epileptic spells were not a traditional basis for long-term disability." ALJ Decision, Tr. 33. As Defendant acknowledges, this statement is not relevant to a determination of the intensity, persistence, and limiting effects of Ms. Johnson's pseudoseizures. Def. Mem. of Law at 21. Finally, in conducting its analysis, the ALJ incorrectly stated that Dr. Rothschild "found no indication of significant depression or anxiety symptoms." ALJ Decision, Tr. 33. Dr. Rothschild did not address Ms. Johnson's anxiety and only noted that she had "no significant history of depressive symptoms." Tr. 1267.

Leon's physical ailments alone do not meet or equal the listings. Nevertheless, they are severe and definitely affect De Leon's residual functional capacity to perform work even of the variety mentioned. In positing hypothetical questions to the vocational consultant, however, the ALJ did not even present the full extent of De Leon's physical disabilities. He made no mention, for example, of De Leon's shoulder or leg problems, or the full implications of his epilepsy. As a result, the record provides no basis for drawing conclusions about whether De Leon's physical impairments or low intelligence render him disabled.").

Ms. Johnson alleges that the ALJ erred by: (1) failing to establish whether her cashier-checker position was past relevant work, Pl. Mem. of Law at 5–7; and (2) mechanically applying the age criteria of the Medical-Vocational Guidelines. Doc. 19-1.

Defendant argues that the record supports a finding: (1) that Plaintiff worked as a cashier-checker, Def. Mem. of Law at 28–29, and (2) that the ALJ did not use the medical-vocational guidelines, *id*. at 28.

The Court agrees in part and disagrees in part.

Substantial evidence does support the ALJ's determination that Plaintiff worked as a cashier-checker. Plaintiff's description of her Jewelry Associate work for Wal-Mart included "run[ing] [the] cash register; process[ing] credit cards; [and] bag[ging] items." Tr. 240. Based upon this record, the vocational expert testified that Ms. Johnson had done cashier-checker work. As a result, the ALJ's determination that Ms. Johnson had performed cashier-checker work was grounded in "substantial evidence in the record." *Schaal*, 134 F.3d at 501.

But the clear language of the ALJ's decision suggests that he used the Medical-Vocational Guidelines as a framework for his decision. The ALJ stated: "the Medical-Vocational Guidelines provides a framework for decisionmaking" and "[a] finding of 'not disabled' is

therefore appropriate under the framework[.]" The ALJ then erred in finding that Ms. Johnson was "closely approaching advanced age." Tr. 34

In a Title II disability insurance benefits case, an ALJ will first determine the date through which the claimant is insured ("date last insured" or "DLI"), which can fall after the hearing. *Woods v. Colvin*, 218 F. Supp. 3d 204, 206 (W.D.N.Y. 2016). If that date is later than the hearing, the ALJ will use either the date of his or her decision, or that later date as the basis for the claimant's age. *Id.* at 208 ("In other cases involving the issue of 'borderline age' in [disability insurance benefits] applications, most ALJs and courts use the claimant's DLI . . . as the relevant benchmark.. . . . If Plaintiff's DLI was used [as the court orders], Plaintiff should clearly have been considered a 'person closely approaching advanced age' rather than a 'younger person.'") (internal quotations and citations omitted). There is disagreement about whether an ALJ should use the earlier ALJ decision date or the future date last insured to calculate the claimant's birthday. *Id.*; *cf Swan v. Barnhart*, No. 03–130 (B–W), 2004 WL 1529270, at *9 n.12 (D. Me. Apr. 30, 2004), report and recommendation adopted, No. 03–130 (B–W), 2004 WL 1572700 (D. Me. May 19, 2004) (using the ALJ decision date as the basis for the claimant's age); *Gallagher v. Astrue*, No. 08–cv–163 (PB), 2009 WL 929923, at *7 n.4 (D.N.H. Apr. 3, 2009) (using the ALJ decision date as the basis for the claimant's age).

Ms. Johnson was born on August 3, 1961. Tr. 96. The ALJ's decision was issued on August 2, 2016. ALJ Decision, Tr. 36. In that decision, the ALJ determined that Ms. Johnson was "52 years old" and thus "closely approaching advanced age." *Id*. at 34. The ALJ also determined that Ms. Johnson would remain insured through December 31, 2019. *Id*. at 28. The ALJ therefore could have properly calculated that Ms. Johnson's age as one day short of 55 (i.e.,

using the ALJ's decision date), or 58 (i.e., her future age per the ALJ's date last insured determination). The ALJ used neither date.

If the ALJ determined that Ms. Johnson was at least 55 years old, she would have been considered of "advanced age," *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, and therefore more likely to be considered disabled. *See*, *e.g*., Table No. 2—Residual Functional Capacity: Maximum Sustained Work Capability (Contrast Rule 202.02 for Advanced age with limited or less education and ability to do skilled or semiskilled labor as being disabled with 202.11 for Closely approaching advanced age with limited or less education and ability to do skilled or semiskilled labor as being not disabled). If the ALJ had used the latter of the two possible dates—date last insured—he would have found that Ms. Johnson was of advanced age.

If the ALJ had used his decision date, he would have needed to perform a borderline age test. As the Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-2-42(B) states:

> If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test: [1] Is the claimant's age within a few days or a few months of the next higher age category? [2] Will the higher age category result in a decision of "disabled" instead of "not disabled"? If the answer to one or both parts of the test is 'no,' a borderline age situation either does not exist or would not affect the outcome of the decision[.] If the answer to both parts of the test is 'yes,' a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

HALLEX, I-2-2-42(B).

The ALJ thus erred in using 52 as Ms. Johnson's age. As a result, on remand, the ALJ should either: (1) find that Ms. Johnson is one day shy of 55 and perform a borderline age situation analysis, or (2) find that Ms. Johnson is 58 and of advanced age. *See Woods*, 218 F. Supp. 3d at 207 ("If a claimant's age is 'borderline' and the ALJ fails to consider whether the

higher age category should be used, remand is warranted so long as using a higher age category would entitle the claimant to benefits.").[8] In addition, as explained throughout this decision, the ALJ should develop the record and use that fuller record as the basis for his Step Four and Step Five findings.[9]

### 4. The Treating Physician Rule

With respect to the nature and severity of a claimant's impairments, "[t]he SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).[10] The treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa*, 168 F.3d at 78 (2d Cir. 1999) (citations omitted).

The treating physician's opinion, however, is not afforded controlling weight where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam). "In order to override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

---

[8] To be clear, this Court does not remand because it finds that a higher age category would entitle Ms. Johnson to benefits. Rather, on remand—which is warranted on other grounds—the Court instructs the ALJ not to use 52 as Ms. Johnson's age and to follow the age determination guidance above.

[9] Consistent with 20 CFR 404.1520(f), it is possible that the fuller record will support a Step Five finding that Ms. Johnson was disabled as defined in the Social Security Act, from February 18, 2014 through August 2, 2016.

[10] On March 27, 2017, new regulations took effect that effectively abolish the treating physician rule; for claims filed before March 27, 2017, however, the treating physician rule continues to apply. *See* 20 C.F.R. § 416.927; *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). That is the case here. Ms. Johnson filed her on March 27, 2017, Tr. 96, before the treating physician rule changed. *See Smith*, 731 F. App'x at 30 n.1.

opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). "An ALJ does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight she gives to the treating source's opinion." *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014), (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Ms. Johnson argues that the ALJ violated the treating physician rule. Pl. Mem. of Law at 14–20.

The Court need not reach this issue.

Because the Court already is remanding to address the failure of the ALJ to develop fully Ms. Johnson's 2015 and 2016 records, and to inquire further into Ms. Johnson's use of a cane over an 8-hour period (i.e., the length of a typical work day), the Court need not determine whether the ALJ properly followed the treating physician rule in the past.[11]

## B. The Social Security Appeals Council Review

Ms. Johnson alleges that the Social Security Appeals Council mechanically applied the age criteria of the Medical-Vocational Guidelines. Pl. Mem. of Law at 5.

Defendant argues that the ALJ, and thus the Appeals Council, did not apply the medical-vocational guidelines at all.

---

[11] On remand, *see, e.g. Selian*, 708 F.3d at 418 ("In order to override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.").

Because the Court already has determined that the ALJ erred in applying the Medical-Vocational Guidelines, the Court need not reach this issue separately with respect to the Social Security Appeals Council.

### C. The Commissioner

Ms. Johnson also alleges that the Commissioner failed to provide regional job numbers, failed to demonstrate a significant number of jobs nationally, and had an insufficient evidentiary basis for her job estimates. Pl. Mem. of Law at 20–22.

The Court need not reach this issue either.

On remand, the ALJ should follow the guidance of 20 C.F.R. § 404.1566, which provides a framework for determining if there are "a significant number of jobs (in one or more occupations) having requirements which [Ms. Johnson is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566

### D. Appointments Clause Issue

On June 21, 2018, the Supreme Court held that the Securities and Exchange Commission's ALJs are "'Officers of the United States,' subject to the Appointments Clause," *Lucia*, 138 S. Ct. at 2055, many of who had not been properly appointed, *id*.

As a result, the Supreme Court ordered rehearing of certain administrative law cases, by a different ALJ when possible. *Id*. ("To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled."). On July 10, 2018, the President of the United States issued an Executive Order stating that: "perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials." Exec. Order No. 13843, 83 Fed. Reg. 32755 (July 10, 2018). Following that Executive Order, most courts have found that *Lucia* applies to

Social Security ALJs. *See, e.g., Bonilla-Bukhari v. Berryhill*, 18-cv-263 (GWG), 2019 WL 1007846, *7 (S.D.N.Y. 2019) (collecting cases with respect to courts that have found that Lucia applies to the social security administration.

Most courts have concluded, however, that Social Security claimants are entitled to a *Lucia* rehearing, only if they raised their Appointments Clause arguments during their agency hearing or appeal. *Id.* ("Bonilla-Bukhari cites *Muhammad v. Berryhill* . . . . This Court, however, agrees with the vast majority of courts that have considered this issue following Lucia and have concluded that exhaustion before the ALJ is required."); *Lobbe v. Berryhill*, No. 17-cv-5589 (HBP), 2019 WL 1274941, at *20 (S.D.N.Y. Mar. 20, 2019) ("In the context of Social Security proceedings, the overwhelming majority of district courts have held that Lucia requires challenges under the Appointments Clause to be raised during the administrative proceedings; courts have found that a plaintiff's failure to do so operates as a waiver.").

Ms. Johnson does not argue that she properly preserved an Appointments Clause argument for appeal. Moreover, Ms. Johnson's case is being remanded on other grounds. Still, the Court must determine whether to remand this case to a different ALJ. *Lucia*, 138 S. Ct. at 2055.

Because Ms. Johnson failed to preserve her Appointments Clause argument, as required by a majority of the courts that have addressed this issue, the Court declines to dismiss this case or remand Ms. Johnson's case to a different ALJ. Significantly, Ms. Johnson has not argued—nor does the Court find—that ALJ Bonsangue is biased, partial, or lacks the qualifications to preside over this remand. *Card v. Astrue*, 752 F. Supp. 2d 190, 191 (D. Conn. 2010) ("The decision to remand a Social Security case to a different ALJ is generally reserved for the Commissioner. Courts may interfere with the Commissioner's decision only upon a showing of

bias or partiality on the part of the original ALJ. There is a rebuttable presumption that the original ALJ is unbiased.") (internal quotations and citations omitted)).

As a result, the Court grants Defendant's motion to dismiss Ms. Johnson's Appointments Clause claim.

## IV.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** Ms. Johnson's motion to reverse the decision of the Acting Commissioner, ECF No. 19; **DENIES** the Acting Commissioner's motion to affirm the decision; and **GRANTS** the Acting Commissioner's motion to dismiss Ms. Johnson's Appointments Clause claim, Mot. to Dismiss Pls. Appointments Clause Claim, ECF No. 35.

The Acting Commissioner's Decision is **VACATED** and **REMANDED** for further hearing consistent with this decision.

The Clerk of the Court is respectfully directed to enter judgment for Ms. Johnson, remand this case to the Acting Commissioner for rehearing and further proceedings in accordance with this decision, and close this case.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after the remand, any subsequent Social Security appeal is to be assigned to the undersigned.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of March, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE